IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HL INTERMEDIATE HOLDCO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civ. No. 15-1169-SLR |
| N.B. LOVE INDUSTRIES PTY. LTD., | ) | |
| WILLIAM KAHN, LOUIS CUCCIA, and | ) | |
| BILL GERARD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

At Wilmington this 10th day of June, 2016, having reviewed defendants' motion to dismiss the complaint for failure to state a claim (D.I. 11), and the papers filed in connection therewith; the court issues its decision based on the following reasoning:

1. **Background.** On December 18, 2015, plaintiff HL Intermediate Holdco Inc. ("plaintiff") filed a complaint alleging breach of warranty against N.B. Love Industries Pty. Ltd. ("N.B. Love Industries"), William Kahn ("Kahn"), Louis Cuccia ("Cuccia"), and Bill Gerard's ("Gerard") (collectively, "defendants"). (D.I. 1) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

2. Plaintiff is a corporation organized under the laws of the State of Delaware. (*Id.* at ¶ 1) N.B. Love Industries is a corporation incorporated in accordance with the laws of New South Wales. (*Id.* at ¶ 2) Kahn is an individual and citizen of the State of North Carolina and was the former president and general manager of the Harper-Love Adhesives Corporation (the "Company"). (*Id.* at ¶¶ 3, 11) Cuccia is an individual and a citizen of the State of Tennessee and was a regional manager of the Company. (*Id.* at

¶¶ 4, 11) Gerard is an individual and citizen of the State of Illinois and was a regional manager of the Company.[1] (*Id.* at ¶¶ 5, 11)

3. In late 2013, plaintiff began discussions with defendants about the acquisition of the Company. (*Id.* at ¶ 9) The Company's facility and headquarters are located in Charlotte, North Carolina, and it designs, manufactures, and sells adhesive additives for use during the construction of corrugated boxes. (*Id.* at ¶ 10) On April 25, 2014 (the "closing date"), plaintiff, the Company, and defendants entered into a written agreement and plan of merger (the "Agreement"), which is governed by the laws of New York. (*Id.* at ¶¶ 13, 24) In the Agreement, defendants made contractual representations and warranties that defendants had not been notified of any actual or potential decrease in the Company's business with Georgia-Pacific. (*Id.* at ¶¶ 15, 16) Specifically, § 3.21(a) of the Agreement's disclosure schedule, which disclosed the Company's ten largest customers, listed Georgia-Pacific as the Company's third largest customer in the fiscal years of 2012 and 2013, with annual revenues of $2,804,698 and $2,945,333, respectively. (D.I.13., ex. C at § 3.21(a)) Section 3.21(c) of the Agreement's disclosure schedules indicated that none of the Company's ten largest customers, including Georgia-Pacific, notified the Company that they may or shall stop, or decrease the rate of, buying materials, products or services from the Company. (*Id.*, ex. C at § 3.21(c)) The Agreement reads in relevant part as follows:

> Except as set forth in Section 3.21(c) of the Disclosure Schedules, no vendor listed on Section 3.21(b) of the Disclosure Schedules has notified the Company that it may or shall stop, or decrease the rate of, supplying materials, products or services to the Company, and no customer listed on

---

[1] The court has personal jurisdiction over defendants because each defendant has consented to the jurisdiction of this court in the Agreement (as defined below). (D.I. 13, ex. B at § 7.10(b))

2

> Section 3.21(a) of the Disclosure Schedules has notified the Company that it may or shall stop, or decrease the rate of, buying materials, products or services from the Company, in each case from the levels achieved during the year ended December 31, 2013.

(*Id.*, ex. B at § 3.21(c)) The meaning of "notified" in § 3.21(c) is not defined in the Agreement. (*Id.*) The Agreement also obligates defendants to indemnify plaintiff for, and hold harmless plaintiff from, any inaccuracy in or breach of any of the presentations or warranties of the defendants. (*Id.*, ex. B at § 6.02) Additionally, the Agreement provides that the parties made no other representation of warranty, express or implied, other than those contained in the Agreement.[2] (*Id.*, ex. B at § 3.28) Finally, the Agreement provides that all notices under the Agreement be in writing. (*Id.*, ex. B at § 7.02)

    4. After the Agreement's closing date, Georgia-Pacific reduced its business with the Company and moved a significant amount of its business to one of the Company's competitors, Henkel AG & Company ("Henkel"). (D.I. 1 at ¶ 26) As of December, 2015, the Company's annual business with Georgia-Pacific had been reduced by approximately $2,000,000, as compared with the annual sales from Georgia-Pacific in 2013. (*Id.* at ¶ 27)

    5. Plaintiff alleges that, in the months leading up to the closing date, Georgia-Pacific notified defendants that it would or may stop or at least decrease the amount of business it did with the Company as compared to 2013. (*Id.* at ¶ 28) To support this claim, plaintiff points to five separate events. (*Id.* at ¶ 29 a-e) First, Georgia-Pacific

---

[2] Section 3.28 of the Agreement provides in relevant part: "Except for the representations and warranties contained in this Article III (including the related portions of the Disclosure Schedules) . . . Sellers . . . [have not] made . . . any other express or implied representation or warranty." (D.I. 13, ex. B at § 3.28)

3

announced that it would be issuing a request for pricing as it was interested in cost savings that may result from changing products and distributors. (*Id.* at ¶ 29 a) Second, Georgia-Pacific informed Gerard and another employee of the Company that, while the Company was still "in the hunt for the Georgia-Pacific contract," its prices were higher than its competitors and Georgia-Pacific was intent on awarding a "single supplier with all the business." (*Id.* at ¶ 29 b) Third, defendants were notified that the "key individuals in charge of purchasing at Georgia-Pacific were changing and being replaced with individuals who did not have strong ties with the Company." (*Id.* at ¶ 29 c) Fourth, the Company did not receive any feedback from Georgia-Pacific on its bids, and was informed that Georgia-Pacific downsized by removing over 60 employees, including managers and regional vice presidents. (*Id.* at ¶ 29 d) Finally, in late March and early April, Georgia-Pacific notified defendants that Georgia-Pacific viewed Henkel favorably, that Henkel's prices were lower than the Company's, and that Henkel was providing certain Georgia-Pacific facilities with demos. (*Id.* at ¶ 29 e) Plaintiff alleges that defendants explicitly discussed the possible loss of Georgia-Pacific's business and concealed such facts from plaintiff. (*Id.* at ¶ 30) In an e-mail exchange between Kahn, Gerard, and Cuccia, dated February 23, 2014, Kahn wrote as follows:

> I think it would be good to have [plaintiff's] people involved for our opening dinner . . . Now as I think about the meeting content I question having them sit in . . . since the deal won't be final . . . I would hate to have the open discussion we need to have about GP [Georgia-Pacific] . . . and give them something to worry about?

(*Id.* at ¶ 31) In another e-mail exchange between Kahn and Cuccia, dated April 11, 2014, Kahn wrote, "[t]he downsize, the demos in the SE, and the delay of the RFP are 3

separate incidents and not material to the sale. If [plaintiff's people] ask for an update on GP [Georgia-Pacific] I need to share otherwise not." (*Id.* at ¶ 32)

6. **Standard.** A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference.

5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

7. The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

8. **Analysis.** Plaintiff alleges that defendants breached their representations and warranties contained in § 3.21 of the Agreement in that defendants failed to disclose to plaintiff that Georgia-Pacific had notified defendants that it "may or shall stop, or decrease the rate of, its business with the Company as compared to 2013." (D.I. 1 at ¶ 38) "To state a claim for breach of express warranty under New York law, a plaintiff must establish (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemburg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (citations omitted).

9. In contesting the sufficiency of plaintiff's breach of warranty claim, defendants contend that breach of the warranty cannot be proven because plaintiff did not sufficiently allege that Georgia-Pacific notified the Company about a reduction of

business. (D.I. 12 at 2) Defendants argue that the plain meaning of "notified" in § 3.21(c) is "having engaged in an affirmative act of giving notice" and "does not describe one's mental state of being aware of or on notice of a possibility."[3] (D.I. 12 at 10) Defendants assert that this definition of notified should be construed consistently with § 7.02 of the Agreement, which provides that "notice is given under the Agreement only when it is in writing;" i.e., § 3.21(c) requires more formality than the five "ordinary business interactions" plaintiff points to as evidence that Georgia-Pacific notified defendants of its possible reduction in business. (D.I. 17 at 3) Additionally, defendants argue that reading § 3.21(c) and § 3.28 (which provides that parties made no other warranties other than those contained in the Agreement) together demonstrates that the parties did not intend to have defendants indemnify plaintiff for awareness of a possible reduction in business. (D.I. 12 at 12) Defendants contend that, because the plaintiff has only alleged that defendants were "aware of" or "on notice of" Georgia-Pacific's possible reduction of business, plaintiff has failed to adequately plead that Georgia-Pacific notified the Company of its possible decrease in business with the Company. (*Id.* at 13-16)

10. Conversely, plaintiff argues that the plain meaning of "notified" does not require written notice and is rather defined as "(1) to give notice to; inform; (2) to give

---

[3] Defendants rely on dictionary definitions of "notify." "To inform (a person or group) in writing or by any method that is understood." *Notify*, *Black's Law Dictionary* (9th ed. 2009) "To point out [obsolete definition] . . . to tell (someone) officially about something . . . to give notice of or report the occurrence of . . . to give formal notice to." *Notify*, *Webster's New International Dictionary* 848 (11th ed. 2003); (D.I. 12 at 10)

7

notice of; make known."[4] (D.I. 16 at 10) Plaintiff further argues that defendants misconstrue "notified" as used in § 3.21(c) with § 7.02's "Notices" provision, as § 7.02 pertains to notices under the Agreement and not preexisting notifications received by the Company. (Id.) Plaintiff contends that the five events it points to in its complaint satisfy the Agreement's notification requirement because the communications between Georgia-Pacific and defendants made defendants aware and, thus, notified that Georgia-Pacific may reduce its business with the Company. (Id. at 9-10) Plaintiff also asserts that § 3.28 explicitly exempts the representations and warranties at issue in § 3.21(c) and has no bearing on the complaint. (Id. at 13) Finally, plaintiff contends that, while the notification requirement in the Agreement is one "clearly based on the facts surrounding and supporting the communications between Georgia-Pacific and the Company," it believes it can find a document evidencing Georgia-Pacific's written notification to defendants of its possible reduction in business upon formal discovery. (Id. at 11).

11. Accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in plaintiff's favor, plaintiff has alleged facts sufficient to support a reasonable expectation that discovery will reveal the necessary evidence to support a prima facie breach of warranty claim, regardless of how the court eventually defines "notified," as used in § 3.21(c).[5]

---

[4] Notify, The American Heritage Dictionary of the English Language 1238 (3rd ed. 1996). Plaintiff also cites the definition from Webster's New International Dictionary used by defendants. (D.I. 16 at 10)

[5] As such, the court does not reach the parties' additional arguments on the principles of contract interpretation.

8

12. **Conclusion.** For the aforementioned reasons, defendants' motion to dismiss (D.I. 11) is denied.[6]

                                                                                                     _____
                                                                                                     United States District Judge

---

[6] Defendants attempt to introduce evidence that plaintiff did not comply with the Agreement's indemnification procedures and should be barred from bringing its claim. (D.I. 12 at 5) If the court considers such evidence with respect to a motion to dismiss, the court must convert the motion to dismiss to one for summary judgment. See Fed. R. Civ. P. 12(d) ("If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). For the reasons discussed, the court declines to convert the present motion into one for summary judgment.